Yeah, I think this is the one we've been looking for today, the last one, and that is Consolidated Matter, case number 413-0563 and also 413-0687, the re-marriage of David Samuel for the appellant Samuel Kahneman and for the appellant Howard Peltman. Mr. Kahneman, are we ready? Thank you. May it please the court, counsel, my name is Sam Kahneman, counsel for the appellant petitioner, Dr. David Samuel. The main issue in this, or really the only issue in this case is does the litigant have a right to his day in court? Because in this case, Dr. Samuel is not complaining because the trial court ruled against him. His complaint is that he never got a hearing in the first place. He was denied what every litigant has a right to their day in court. The issues in this case, the issues in this case are, there's five, whether the February 7th, 07 order setting child support to urge, disposing of petitioner, in fact did dispose of petitioner's motion to modify child support. Whether the trial court erred in determining the order of February 7th, 2007 to be a final order, whether the trial court erred in failing to rule on the petitioner's 2-1401 petition, and a couple of other issues. I just want to briefly get to the facts. This case started on January 8th, 2004 when Dr. Samuel, through counsel, filed a petition to modify his child support, health insurance, and life insurance provisions based on the fact that one of his three children had been emancipated, his income had been reduced, and his former wife was not using the health insurance he was providing and the cost of life insurance. Then he filed a second motion on September 21st, 2005 on the heels of Hurricane Katrina. He lived in the New Orleans area at the time and he filed another petition to temporarily suspend child support on the basis that due to Hurricane Katrina, his income as a urologist had been reduced to de minimis. So the case was continued from time to time for status. There were motions, a couple of discovery motions filed by the respondent, Mrs. Eierling, and in response to those discovery motions, Dr. Samuel's attorney did file certificates of compliance with discovery and after the second certificate of compliance, there was no further efforts by Mrs. Eierling to enforce discovery or claims that discovery was inadequate in the record. The case was set for trial on December 19th, 2005 at 9.30 a.m. The record is silent for some reason. I was not the trial attorney, but the record is silent as to why no trial occurred that day. There's nothing in the record to explain that. There's nothing in the record at all? For interest, attorneys, fees, and costs, notice it for hearing on February 1st, 2007. And then on that date, Dr. Samuel travels all the way to Springfield from the New Orleans area for that hearing, comes to the circuit court here in Springfield. He asks the trial judge, Judge Gramlich, to have his motion for a rearage heard first before the rearage is set. I'm sorry, his motion to reduce child support heard motions before the rearage is set. Counselor? Yes. Do you have something in the record substantiating those representations by the respondent that he was told, send your motions and then I'll hear them? Yes. His verified section 2-1401, his verified motion, the motion that I filed in, I think it was July of 2008, which was a motion, it was a verified motion, including a 2-1401 count. That's an allegation. We're talking about evidence of a bystander's report or transcript of the February 1st hearing. Is there anything to substantiate that claim? Well, Mr. Justice, there was no court reporter there. I wasn't the trial attorney. I made a representation, or the appellant made a representation in his verified 2-1401 petition as to what happened that day. That has never been contravened. There's nothing in the record, no verified response saying that that didn't happen. So we have his verified statement as to what happened, and there was no conflicting, nothing was filed that was verified in opposition to that or saying that didn't happen. So that's what the record shows. In any event, the hearing was held on February 1st, 2007, and the record shows that a docket entry was made by Judge Gramlich, setting a verge at $86,290 together with interest and ordering Mr. Feldman, the Respondent's attorney, to prepare a written order, and Dr. Samuel did, in fact, get a hearing date on March 1st, 2007, and he notified Respondent's counsel by letter that date. And the hearing was eventually canceled, apparently by Respondent's counsel unilaterally. Let me ask you about that, Mike. You say that the hearing that your client obtained was canceled by opposing counsel, and your client didn't appear on that date. Is that right? No, he got a phone call from opposing counsel's office saying that the hearing was canceled. Well, apparently in Sangamon County, I mean, it's my experience as a lawyer that if you call the judge's secretary and say both parties agree that we're going to set it over to another date, that'll be done. In this case, there were not two attorneys on each side. One side was pro se, and normally, if an attorney on the opposing side, and I'm in a case, wants to get a hearing continued or canceled, they'll always call me or contact me or file a motion to continue. What I ask, though, is if that attorney told you it had canceled your hearing, would you not show up in court on the date that he had originally set it? I mean, if I'm in New Orleans and the hearing's in Springfield, L.A., being that careful attorney, I would probably call the court or call a certain clerk's office to confirm that it, in fact, had been canceled. But I think we're dealing with a pro se litigant here, and if he gets a call from a lawyer who's an officer of the court and tells him that the hearing was canceled, I think it's reasonable for him to rely on that representation by the officer of the court that the hearing was canceled and not show up. I mean, we know that from the record, we know that if he had shown up, nothing would have happened because the hearing was canceled. I think I even have it attached to the brief in the appendix is a copy of the calendar page of the judge's scheduling calendar, which shows that the hearing was set on that date, or marked in on that date, and then it was crossed off. So the bottom line is, the order was entered, and the written order was also entered February 7th, directed by Mr. Feldman, and the order simply says that a rearage is set at $86,290 together with interest. It just doesn't say anything about the notion to modify a rearage or a motion to modify child support or a contemporary motion to suspend child support. So the hearing was initially set for March 1st by Dr. Samuel on his motions to modify support, and as we discussed, it was canceled with some effort. Dr. Samuel finally got another hearing in September of that year, September 17th, 2007, and he notified counsel again by letter. This time he did come to court in New Orleans, and he tried to get his hearing on his motions to modify child support, and the court on that date actually entered a docket entry and denied any relief. In the docket entry, it appears that the motion filed by Petitioner on January 8th, 2004, has either been abandoned or has been rendered moot by the judgment entered on February 7th, 2007. The docket entry didn't address the other motion that was filed to temporarily suspend child support based on Hurricane Katrina. Then Dr. Samuel contacted me about 32 days after that date, and I then did some research and eventually filed my two-count motion to modify or abdicate that order, and the motion was based on the allegation that the order of February 7th was not a final order because it didn't decide all the issues in the case, and it also had a second count, a 2-1401 count. Eventually, that motion to dismiss was filed by Mr. Feldman to that motion. I filed the motion to strike to dismiss. The motion to dismiss, asserting it was not legally sufficient, that was denied. Finally, the hearing was held by Judge Madonia. Judge Gramlick had since retired, and Judge Madonia determined that the February 1st, 2007 hearing decided all the pending financial issues that were before the court, including the petitioner's motions for modification of support and the petition for temporary relief due to Hurricane Katrina, that those were both decided by Judge Gramlick on February 1st, 2007. Our first argument was that the February 7th, 2007 order, setting child support at $86,290, did not dispose of petitioner's motions to modify child support. It simply doesn't make sense that Judge Gramlick would tell Dr. Samuel to go get a hearing on your motions to modify support within 30 days if he was deciding them. He made a docket entry on February 1st, 2007, Judge Gramlick did, and he wrote nothing in the docket entry about Dr. Samuel's two motions to modify support. Further, if Attorney Feldman later drafted a written order for Judge Gramlick to enter, which he did enter, and if Attorney Feldman had thought that Judge Gramlick had decided and denied those motions to modify support, he would have put it in the written order. But there's nothing in the written order to that effect. So the conclusion by Judge Madonia that the February 1st, 2007 docket entry and the February 7th, 2007 written order disposed of Dr. Samuel's two motions to modify support is simply not supported by the record and is erroneous and should be reversed. The second argument is that the trial court erred in determining that the order of February 7th was a final order. Rule 304 of the Supreme Court rules states that if there's multiple parties or multiple claims for relief are involved in an action, that if fewer than all the claims are determined, it's not final, it's not appealable, unless that Rule 304 language is stated in there that there's no just reason to delay enforcement appeal that order. That wasn't in the order. Counsel? Yes. This is out of order in terms of the sequence that you're addressing things. But going back to the February 1st, 2007 hearing, putting aside the allegation of the 214-01 petition that you referenced earlier, is there any evidence in the record that Judge Gramlick was aware of petitioners' two filings that you're referencing here? At the time he ruled on the rearage of a petition? I don't. I really don't know. I mean, there's no transcript of the hearing on February 1st. There's no court report in there. I wasn't there. I understand the case law that you've cited, too, indicates it's preferable that a court rule on motions in terms of their sequential order. But what I'm wondering about is, was any of this, were either of those two petitions filed by a petitioner brought to the court's attention on February 1st? It seems like the record is silent on that. Well, I agree the record from that day, from February 1st, 2007, is silent. All there is is a docket entry by Judge Gramlick. That's all we have. But there is Dr. Samuel's later motion, verified motion that I filed in which he states that he came to Swinfield that day to try to have his motion to reduce support heard. That was filed back a few years earlier. And that verified assertion has not been conflicted with. I don't even think it's been contended by opposing counsel that that didn't happen. And there's certainly no verified statements in the record saying that that's untrue. Well, you know, as a practitioner and a file judge, that these divorce and family law cases can get to be briefed back. And there are a lot of my links that are put there, but never noticed up for the hearing. And it seems like a pretty tough thing to count on the judge to go through and advance a hearing and make sure that everything has been ruled on in the file in advance of this last filing that's noticed up for hearing. I'll grant that. But, I mean, clearly, Dr. Samuel came to – he asserts that he came to Swinfield that day to have the hearing on the motion set at rearage. He says he was told by the judge to get a hearing date and do this within 30 days. Then there's evidence in the record that the judge's calendar showed that a hearing was set on March 1, 2007. There's a letter that's in the record that Dr. Samuel sent Attorney Feldman stating that he set this matter for hearing on that date. And then there's also the showing that the entry on the calendar page was crossed out. So I think there's plenty of documentary evidence in the record to show that Dr. Samuel did bring the motion to reduce support to the attention of the court on February 1, 2007. Why would he go get a hearing date as he did if the judge hadn't told him to? The judge just said, no, Dr. Samuel, it's too late. Your motion was denied. Then, you know, he obviously wouldn't have tried to get a hearing date. So the second argument is simply that the February 7, 2007 order clearly didn't decide all the issues. Even on Mrs. Ireland's motion, she asked for attorney's fees and costs and interest, and it clearly did not address the attorney's fees. It didn't say any amount of attorney's fees were granted or that attorney's fees were denied. So that's left out there hanging. And then you had, and it's even with the interest, that one isn't even clear because it says that the rearage is ordered together with interest. It's not clear whether that figure is a figure that includes interest or he's just saying that's the figure and then you've got to add interest on after that. But in any event, the, and then there were Dr. Samuel's motions were also left undecided, his two motions. So clearly that was not a final order and there was no statement that there's no just reason for delaying enforcement or appeal of this order. And even, I'm. Mr. Chairman, you're out of time.  Okay. All right. Thanks. Thank you. May it please the court and counsel, my name is Howard Feldman. I am attorney for Jean Samuel, now Jean Ireland. Let me start by directing the court to the motion to set a rearage that started all of this. Because quite honestly, without the motion to set a rearage, I'd be still waiting for the hearing on the motion from 2000 that isn't even mentioned here in oral argument, which was the first request to change. Then there was in 2004. Then there was a motion to abate in 2005. We're now in 2007. It's real clear Miss Ireland's receiving no child support. The court can look at the exhibits that are attached to our motion. Our motion to set a rearage in paragraph four specifically says that David Samuel brought a motion to modify as well as a motion to abate support. In paragraph four, we brought those to the attention of the court. Mr. Samuel, Dr. Samuel shows up in court at the day of the hearing. He has not noticed his motions. He is unrepresented. And we have holes in discovery that you could drive, since I was here before, a very large transformer through. Now, the support that was set is $2,700 for a board certified physician. This was set in 1993 or 1994, early on. Clearly a child had become emancipated. If we're going to modify support, it is important to know what information you have. Like tax returns that are truly filed, not tax returns that the government. Really simple things, such as how much income and how much expenses did you have in your practice. We repeatedly filed motions to compel. And if anything, I will fully admit that probably the practice was sloppy in Sangamon County. Because domestic court, unfortunately, is a high volume operation here. And we don't handle discovery matters in the same way they do in federal court by going down each particular item. Practice here, unfortunately, and it's not right. I'll fully admit to it as you go there and the judge says, work it out and come back. So by 2007, Ms. Ireland wants to bring matters to a conclusion. Her kids are entering college. And we have a motion for post-high school educational support. But when we had the hearing on February 1st, based upon the motion to set a rearage, we had said that he had abandoned his motion. He didn't come with financial. He was not prepared to do that. We moved forward. His motions were not set. He didn't file a response to the motion to set a rearage. This record does not reflect a motion to set, a response to the motion to set a rearage to say that we're not there. Child support, I didn't need to mention interest in the order. Because child support, as we know, has statutory interest from every payment. And we did not calculate each payment out in the fact that the next week there would be 9% interest owed on whatever amount of support was outstanding. It would be a never-ending task. Now, I don't know whether Mr. Kahneman wants me to go ahead and ask for attorney's fees and see if we can get more money from Dr. Samuel. Because we abandoned, is what I heard, we abandoned the post-high school educational support. Why get post-high school educational support when you're not getting any child support to start with? So we ran an order. And yes, there was a statement, file something within 30 days. Your Honors, everybody in this room, I would think, including Mr. Kahneman, knows why that 30-day period was set. If you had a motion pending since 2004 or 2000 or 2005, there's no magical 30 days. But a motion to reconsider needs to be filed within 30 days of the entry of the order. But Dr. Samuel thought he should represent himself. The next thing, then we have these series of requests for hearings. Hearings on what? There was no pending motion. Clearly, the order on motion to set a rearage had said these were out there and were abandoned. And by the very nature of the order that was entered, the motion was motion disposed of those. But if you wanted to say the court was wrong, he files a motion to reconsider. You don't sit on your hands for 15 or 18 months until July of 2008 to raise all kinds of spurious allegations against counsel and against the court. There was no request to ask me about, bystander, what occurred on February 1st. I could have easily told Mr. Kahneman, if he wanted to know, that the judge said he would have a period of time to reconsider my decision. Did Dr. Samuel come talk to a lawyer in that period of time? No, but I think shortly thereafter he may have spoken to Mr. Kahneman. And so, somewhere shortly after that, in which there was something like 10 months or 12 months before the motion to vacate was put in, Dr. Samuel has had his day in court. He has had an opportunity to have his day in court. He has been represented by five lawyers until he decided he didn't want to be represented by a lawyer. I don't know what Dr. Samuel's income is. I don't know it then, and I don't know it now. But I do know what the average income for a board-certified urologist is. And I will tell you that 20%, not 28.5%, 28%, or 32%, but I can tell you that 28.1% is greater than the amount of child support if you look at the average one. So, from my perspective as a practicing lawyer, I want to have information. He's in private practice in the state of Louisiana. And the 2005 motion, which was never set for hearing, wasn't to terminate or modify support. It was to abate support. I assume it was to abate to 2,750. But look at the patients that Jean Ireland did with the mother of three children. And then she abandons and says, forget about it. I don't want post-high school educational support. She walks away from that because she didn't get any child support. Sometimes nothing is still nothing in my math. The order was final. It resolved all of the substantial issues in that case. And we cited a case that talks about that that's the standard, not if there's some incidental matters. There's no petition for attorney's fees. What Mr. Kahneman's standard would be is that every order that comes out where somebody has pled attorney's fees as part of their prayer for relief has to contain in that order a specific saying, it's withdrawn, it's denied. That would leave a whole lot of orders out there, in my view, that are non-final orders. And as far as the motion to dismiss, what I've said here is contained in the motion to dismiss. The trial court was aware of the motion to set a ridge. There's part of me that says, okay, we'll go back. I don't want to screw it, and so the court does not want to screw that. That's not a relief I really want. But there's part of me that suggests, okay, Dr. Samuel, you want to start this over? We'll start this over. And first, let's start producing all your income information from 2004 to the present. Or 2000 to the present, because I guess they've abandoned the 2000 motion to modify, because I haven't heard about that one. The trial court properly struck the motion to vacate. And before I sit down, my lights aren't even up. That's unusual for me. But the motion to vacate, the 214-01, you have to show due diligence. So he didn't know that something bad had happened in July of 2007 or in September of 2007. And he waits until July of 2008. Does the court have any questions? Thank you. Thank you. Any rebuttal? Yes. Thank you. The court will proceed. The motion that was entered on the docket entry on February 1, 2007, and the written order on February 7, which Mr. Feldman drafted, didn't say anything about the motion to modify support has been abandoned or the motion to modify support is denied. Nothing. Didn't address those at all. Although the fact that the post-high school education motion that Mr. Feldman filed was withdrawn, that was mentioned in the docket entry. So it seems strange that if that motion was abandoned, the judge would mention it in the docket entry, but the other motions that he asserts were abandoned are not mentioned in the docket entry. It doesn't make sense. As far as the holes in discovery, that's not supported by the record. The record shows there were only two motions to compel discovery that were filed, and after the first one, Dr. Samuel's attorney filed a certificate of compliance, and then another motion was brought saying that the discovery he responded to was not an adequate response. So then Dr. Samuel filed a further response trying to address the complaints that Mr. Feldman had in his motion, filed a certificate of compliance again a second time, and after that there's no further motions to compel discovery or complaining about discovery is inadequate, nothing like that. So this argument is not based on anything that's in the record, so it's an improper argument. As well as the arguments about that he's a doctor and so we know that his income has got to be such and such, there's nothing in the record as to what an income of a urologist is, so that's again an argument that's not based on the record. And the only reason the 2000 motion, I mentioned in the brief, the motion to reduce child support that was filed in 2000, was simply, and that was by some other attorney that was representing Dr. Samuel, simply to show that I wasn't even aware of that motion until I was writing the brief and reviewed the entire record, was just to show that here's a guy who's been represented by numerous attorneys, he's tried to have those motions to modify support heard once, twice, three times, he's never gotten a hearing. And all he wants is a hearing and if it shows that there's no basis to reduce the support, then so be it. But if it shows there is a basis, then the allurage amount can be reduced retroactively based on his motion. So that's all he's asking for and again, also as Justice Harris remarked earlier, this rule that motions are to be decided in the order that they're filed or to be heard and decided in the order that they're filed was violated by the trial court and that's an error that should be corrected by the appellate court. So in summary, there was never any hearing. The record doesn't reflect that an order was made on February 1st or February 7th or dismissing or claiming they were abandoned or anything about his motions to modify support. And therefore, we're asking the court to reverse the trial court's, Judge Madonia's trial court order and either order the case to be remanded for hearing on the motions to modify support or for hearing on the 2-1401 petition because there was never any. None of the orders he addressed the 2-1401 count of Dr. Samuel's post-trial motion. And I think due diligence was shown. He had contacted me a little over a month after he was in court here in September of 2008 and we filed his motion within about nine or ten months of that. The deadline, the only deadline that he was facing was the two-year deadline of Section 2-1401 and it took some time to research the record, get the documents. Even the record reflects that he saw copies of documents I think in January of that year. So there was no action taken by Mrs. Ireland during that time to try to enforce the order and this case is rightfully, yes, your honor. Thank you. Thank you. Thank you as well, Mr. Feldman. Thank you, your honor. The case is submitted and the court stands in recess until further call.